OPINION
Defendant-appellant, Tena Seeling, appeals the decision of the Warren County Court of Common Pleas, Domestic Relations Division, granting plaintiff-appellee, Jeffrey Seeling, sole custody of their three minor children.
The parties were married on July 3, 1982. They have three children, Tommy, born June 7, 1985, Tyler, born October 4, 1986, and Tara, born May 26, 1989. The family moved from Hillsboro, Highland County, Ohio to Waynesville, Warren County, Ohio because appellee's job as a wildlife officer required that he reside in Warren County. In 1989 and 1991, appellee was injured in accidents while at work. He was able to work only intermittently from 1991 through 1995. In 1995, his condition worsened and he could no longer work. Since that time, appellee's only sources of income have been his P.E.R.S. disability pay and worker's compensation benefits.
Appellant worked as a nurse from 1984 to 1998. In early, 1998, she was caught stealing pain medication from her employer. Appellant had been addicted to the medication for more than seven years. At times, she stole appellee's pain medications, replacing the pills with Tylenol. Appellant unsuccessfully attempted to commit suicide by overdosing on the medications. In May 1998, she entered Shepherd Hill, a treatment facility specializing in medical personnel. Appellant failed to complete the treatment program and left on June 26, 1998. Appellant claims that she left because appellee forced her to do so, but appellee contends that appellant chose to leave.
The parties fought intensely the weekend that appellant left Shepherd Hill. Each charged the other with domestic violence. Appellant claimed that appellee physically abused her. Appellee countered that appellant attacked him. Appellee burned some of appellant's clothes in a fire on the front lawn. Appellee left the marital residence and returned to his parents' home in Hillsboro. On July 8, 1998, he filed for divorce.
Since appellee filed for divorce, the situation has not improved. The parties have had shared custody of the children during the pendency of this case. Nearly every time they have exchanged the children, they have verbally abused one another. At one point, appellant refused to return Tara to appellee, claiming that she was afraid for Tara's safety. Appellant was placed in the county jail. She attempted to speak to the trial court to make arrangements to give Tara to a county agency. Tara was eventually returned to appellee's care.
The trial court held a number of hearings from December 1998 through March 1999. The children were appointed a guardian adlitem. On March 31, 1999, the trial court filed a lengthy decision addressing custody of the children and division of marital assets. On May 31, 1999, the trial court filed a decree of divorce adopting its earlier decision. Appellee was given sole custody of the children, and appellant was ordered to pay child support. Appellant was given visitation with Tara during the summer months after the end of the school year. Appellant appeals, raising a single assignment of error:
 THE TRIAL COURT ERRED IN GRANTING PLAINTIFF-APPELLEE JEFFREY SEELING SOLE CUSTODY OF THE PARTIES' MINOR CHILDREN.
 In her assignment of error, appellant contends that the trial court ignored substantial evidence which supported granting her custody of the children. She argues that the trial court's decision was an abuse of discretion because it was against the weight of the evidence.
A trial court's decision concerning custody cannot be reversed by a reviewing court absent an abuse of discretion.Master v. Master (1994), 69 Ohio St.3d 83, 85. An abuse of discretion implies an attitude of the trial court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161.
The primary concern of the trial court when determining custody of a child is the child's best interest. R.C.3109.04(A)(1) provides that:
 If * * * no plan for shared parenting is in the best interest of the children, the court, in a manner consistent with the best interest of the children, shall allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent the residential parent and the legal custodian of the child, and divide between the parents the other rights and responsibilities for the care of the children, including, but not limited to, the responsibility to provide support for the children and the right of the parent who is not the residential parent to have continuing contact with the children.
 In determining the best interest of the children, the trial court is guided by R.C. 3109.04(F)(1), which provides, in relevant part:
 In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of the children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
 (a) The wishes of the child's parents regarding his care;
 (b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
 (c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;
 (d) The child's adjustment to his home, school, and community;
 (e) The mental and physical health of all persons involved in the situation;
 (f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court.
 The trial court found that the shared parenting plan recommended by the children's guardian ad litem was impractical because neither parent would support the other's rights to companionship and visitation. The trial court was mindful that both parties had made domestic violence complaints, all of which were deemed to be unfounded; that appellant had a long-standing drug addiction and had attempted suicide numerous times; and that appellee had been verbally abusive. The trial court found that the primary reason for appellee's conduct was that the pain from his injuries had become unbearable because appellant had stolen his pain medications to satisfy her addiction.
The trial court extensively discussed the interests of the children. All three children were well-adjusted to their school in Hillsboro, and all had played sports in the past. Tommy and Tyler were more closely bonded with appellee, and they expressed a wish to stay in Hillsboro. Tara was more closely bonded with appellant, but she was also settled in Hillsboro. Appellant had discipline problems with Tyler, and she was often either physically violent toward him or completely unconcerned about his welfare. Appellee's family and other relations lived in Hillsboro, and the children were accustomed to seeing their paternal grandparents often.
Although both parents suffered from physical or emotional problems, the trial court felt that the situation weighed in favor of appellee. His physical disabilities arising from his back injuries were alleviated by pain medications. There was evidence that he acted appropriately with the children when taking his medications. On the other hand, there were serious questions regarding appellant's addiction and suicide attempts. There were additional concerns that she had not established a settled life for herself. She hindered the sale of the marital residence, she did not seek new employment, and there were doubts whether she was establishing a separate home for herself.
The trial court noted the physical distance between appellee's home in Hillsboro and where appellant was living in Waynesville. Although the distance was not enormous, it made frequent exchange of the children impracticable. Considering that the parties fought at past exchanges, and that neither of them was supportive of the other's visitation rights, the trial court felt constrained to find that only one parent should be granted visitation.
Appellant contends that the trial court failed to recognize evidence she presented in her favor. She claims that appellee is manipulative and deceitful, and that he used her family against her. There was testimony that appellee was verbally abusive, and his temper had resulted in emotional harm within the family. The trial court acknowledged this testimony, but found that the evidence presented, as a whole, weighed in favor of granting appellee custody of the three children. These are factual issues on which the trial court is permitted wide discretion, and the trial court's resolution of these issues is supported by the record.
We note that this case does not present an easy decision, as both parents have helped to create the hostile environment in which their children will now be raised. Mindful of this fact, the trial court extensively discussed the evidence presented and the factors which weighed in its decision. Upon review of the record, we cannot say that the trial court abused its discretion by granting appellee sole custody of the children. Accordingly, appellant's assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.