OPINION
{¶ 1} Appellant, Brenda Morris ("Brenda"), appeals the January 4, 2006 decision of the Court of Common Pleas of Allen County, Ohio, Juvenile Division granting permanent custody of her minor son, Billy, to the Allen County Children Services Board ("ACCSB").[1]
 {¶ 2} Billy was born on September 2, 2003 to Brenda Morris and Billy English, Jr. (biological parents). When Billy was born he tested positive for marijuana. On September 15, 2003, a complaint was filed alleging that Billy was dependent and abused and seeking Protective Supervision or Temporary Custody to be granted to the ACCSB. On December 17, 2003, the Court of Common Pleas of Allen County, Ohio, Juvenile Division filed its judgment entry adjudicating Billy a dependent and abused child. On March 3, 2004, the court filed its dispositional judgment entry placing Billy into temporary custody of the ACCSB. In addition, the court approved a case plan designed to facilitate the return of Billy to his parents.
 {¶ 3} On August 16, 2004, the Allen County Children Services Board filed a Motion Requesting Permanent Custody of Billy. On January 18, 2005, the previous Guardian Ad Litem filed his report and recommendation. Subsequent thereto, the previous Guardian Ad Litem moved and filed a motion to withdraw. On March 10, 2005, the current Guardian Ad Litem was appointed by the court. On April 6, 2005, he filed his report and recommendation. On April 11, 2005, the Court of Common Pleas, Allen County, Juvenile Division, filed a judgment entry stating that upon completion of the hearings held on April 7, 2005, the matter was under advisement and until a judgment was rendered Billy was to stay in the temporary custody of the ACCSB.
 {¶ 4} On January 4, 2006, the Court of Common Pleas, Allen County, Juvenile Division, filed its judgment entry granting permanent custody to the ACCSB. It stated that upon consideration of the evidence presented and the written and oral recommendations of the child's Guardian Ad Litem, it found by clear and convincing evidence that the ACCSB should be granted permanent custody of Billy, thereby terminating all parental rights. Furthermore, the court provided details as to the clear and convincing evidence provided and consideration of the enumerated factors set forth in R.C. 2151.414.
 {¶ 5} On January 30, 2006, Brenda filed a notice of appeal raising the following assignments of error:
 Assignment of Error 1 THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR PERMANENTCUSTODY AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THEEVIDENCE AND CONTRARY TO LAW.
 Assignment of Error 2 THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTEDPREJUDICIAL ERROR IN DENYING APPELLANT'S REQUEST FOR AN EXTENSIONOF TIME TO ATTEMPT TO REGAIN CUSTODY OF THE CHILD.
 Assignment of Error 3 THE TRIAL COURT ERRED IN FINDING THAT THIS CHILD NEEDS ALEGALLY SECURE PERMANENT PLACEMENT, WHICH PLACEMENT CAN BEACHIEVED ONLY THROUGH A GRANT OF PERMANENT CUSTODY TO THE ALLENCOUNTY CHILDREN SERVICES BOARD.
 {¶ 6} In our review of a grant of permanent custody we shall note that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes
(1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In reMurray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169. "A parent's right to the custody of his or her child has been deemed `paramount'" when a parent is a suitable person. In re Hayes,supra; In re Murray, supra. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra.
 {¶ 7} In addition, trial courts are vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blaker v.Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317, at ¶ 9, citingMiller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. Therefore, absent an abuse of that discretion a trial court's decision regarding the allocation of parental rights and responsibilities for a minor child must be upheld. Masters v.Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Thus, it is within these constructs that we now examine Brenda's assignments of error.
 {¶ 8} The Ohio Revised Code sets out a two-pronged test to be applied when considering a motion for permanent custody. Under this test, the trial court must determine, by clear and convincing evidence, (1) that a grant of permanent custody to the ACCSB is in the best interest of the child and (2) that one of four enumerated factors applies. R.C. 2151.414(B)(1). Specifically, these factors include that "the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1)(d).
 {¶ 9} The Supreme Court of Ohio has held:
[C]lear and convincing evidence is that measure or degree ofproof which will produce in the mind of the trier of facts a firmbelief or conviction as to the allegations sought to beestablished. It is intermediate; being more than a merepreponderance, but not to the extent of such certainty as isrequired beyond a reasonable doubt as in criminal cases. It doesnot mean clear and unequivocal.
 Cross v. Ledford (1954), 161 Ohio St. 469, 477,120 N.E.2d 118, citing Merrick v. Ditzler (1915), 91 Ohio St. 256,110 N.E. 493. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra (citations omitted). Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 10} Applying the test laid out in R.C. 2151.414(B)(1), the trial court properly found under the second part of the test that Billy "cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a). In making this determination, the trial court is required to consider "all relevant evidence." R.C. 2151.414(E). That section also provides a list of sixteen factors a court shall consider when determining whether a child can be placed with either parent within a reasonable time. If the court finds any of those factors present, the court is required to find that the child cannot be placed with the parents within a reasonable time. Some of these factors include: (1) that the parents have "failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home," R.C. 2151.414(E)(1)(2) that "[t]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child," R.C. 2151.414(E)(4) and (3) that the parents are unable to provide basic necessities for the child such as food, clothing, and shelter, R.C.2151.414(E)(14). The court may also consider "any other factor the court considers relevant." R.C. 2151.414(E)(16).
 {¶ 11} There is ample evidence supporting the trial court's finding that Billy cannot be placed with Brenda within a reasonable time. Specifically, the ACCSB provided reasonable case planning and diligent efforts to assist Brenda to remedy the problems that initially caused the child to be placed outside the home. However, Brenda failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home.
 {¶ 12} Brenda did not show a commitment toward Billy by fulfilling the goals of the case plan. The case plan provided that Brenda was to obtain drug assessments and to follow through with any recommended counseling. It is noted that Brenda did finish her parenting classes and counseling according to the case plan. Also, she was very regular in attending visitations with Billy. However, Brenda has not completed all the case plan goals and the record indicates that Brenda has admitted to drug use and has continued to test positive for drugs. Specifically, she tested positive for drugs each and every time she was tested during the pendency of this case. She was tested a total of sixteen times. In addition, the parents had a history of domestic violence that was addressed in the case plan; however, it was reported in the record that Brenda still had a history of being physically abusive when she got mad. Furthermore, Brenda failed to obtain and maintain suitable, adequate and appropriate housing for Billy. Therefore, Brenda failed to complete numerous case plan goals which intended to address her admitted drug problem, her domestic violence issues with Billy's biological father, and to secure suitable, adequate and appropriate housing for Billy.
 {¶ 13} The foregoing demonstrates sufficient evidence to support the trial court's conclusions that Billy could not be placed with Brenda within a reasonable time. The evidence before the court demonstrates that several factors listed in R.C.2151.414(E) applied; thus, requiring the trial court to make this finding.
 {¶ 14} R.C. 2151.414(B)(1) also requires the trial court to find by clear and convincing evidence that granting permanent custody to the ACCSB is in the child's best interests. In making this determination, the trial court should look at all relevant factors, including those listed in R.C. 2151.414(D).
 {¶ 15} In the instant case, the record supports the trial court's finding that granting permanent custody to the ACCSB is in the child's best interests. Simply put, the inadequacy of the home and failure of Brenda to provide for the basic needs of Billy, her failure to maintain stable housing and employment, as well as her repeated failures to commit to the requirements of the case plan all demonstrate that a legally secure placement can only be achieved by granting permanent custody to the ACCSB. See R.C. 2151.414(D)(4). Finally, the record demonstrates that Billy interacts well with the foster parents, is in good health and apparently has no ill effects from having tested positive for marijuana at birth. See R.C. 2151.414(D)(1). Accordingly, there is sufficient evidence to support the trial court's finding that a grant of permanent custody is in the child's best interests.
 {¶ 16} Based on the foregoing, the grant of permanent custody was not against the manifest weight of the evidence. There was sufficient evidence for the trial court to make its findings by a clear and convincing degree of proof. Therefore, Brenda's first assignment of error is overruled.
 {¶ 17} Brenda alleges in her second assignment of error that the trial court abused its discretion and committed prejudicial error in denying her request for an extension of time to attempt to regain the custody of her child.
 {¶ 18} As stated above, absent an abuse of discretion a trial court's decision regarding the allocation of parental rights and responsibilities for a minor child must be upheld. Masters v.Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 19} Pursuant to R.C. 2151.415(D), a parent is provided up to two years (an initial year, plus two discretionary extensions of six months each) to comply with their case plan while their child is in temporary custody. In this case, Brenda was afforded nineteen months to remedy any and all problems causing Billy to be removed from her care. However, the trial court simply stated that Billy's need of a legally secure permanent placement could not be achieved without a grant of permanent custody. Therefore, upon the trial courts review of the evidence it held that "the chemical dependency of the mother is so severe that it makes the parent unable to provide an adequate, permanent home for the child at the present time and as anticipated, within one year after the date of this hearing." January 4, 2006 Judgment Entry.
 {¶ 20} Based on the foregoing and our independent review of the record, the trial court did not abuse its discretion in denying Brenda's request for an extension of time to attempt to regain custody of Billy because sufficient time had already been provided to allow her to remedy any and all problems causing Billy to be removed from her care. Therefore, Brenda's second assignment of error is overruled.
 {¶ 21} In Brenda's third assignment of error, she claims that the trial court erred in finding that Billy needs a legally secure permanent placement. Specifically, she claims that the trial court failed to properly consider a planned permanent living arrangement.
 {¶ 22} Either upon the adjudication of a child being an abused, neglected, or dependent child or upon the expiration of temporary custody, the court may place a child into a planned permanent living arrangement. See R.C. 2151.353(A)(5)(b) and R.C.2151.415(C)(1). However, the agency shall present evidence to indicate why a planned permanent living arrangement is appropriate for the child. Id. Then a court may place a child in a planned permanent living arrangement if it finds by clear and convincing evidence that a planned permanent living arrangement is in the best interest of the child and that one of the following exist:
(a) The child, because of physical, mental, or psychologicalproblems or needs, is unable to function in a family-like settingand must remain in residential or institutional care.
 (b) The parents of the child have significant physical,mental, or psychological problems and are unable to care for thechild because of those problems, adoption is not in the bestinterest of the child, as determined in accordance with division(D) of section 2151.414 of the Revised Code, and the childretains a significant and positive relationship with a parent orrelative;
 (c) The child is sixteen years of age or older, has beencounseled on the permanent placement options available to thechild, is unwilling to accept or unable to adapt to a permanentplacement, and is in an agency program preparing the child forindependent living.
R.C. 2151.353(A)(5) and R.C. 2151.415(C)(1).
 {¶ 23} In the case at hand, the ACCSB did not request the trial court to consider the alternative of placing Billy in the planned permanent living arrangement which is one of the first prerequisites of R.C. 2151.415(C)(1). Additionally, a planned permanent living arrangement is generally a plan that is intended to provide a child with the necessary skills for independent living, such as job seeking skills, budgeting and financial skills, and other practical day-to-day living skills. In this case, Billy was born on September 2, 2003; thus, he is presently only two and a half years old. Therefore, it is unlikely that he needs to be learning the necessary skills for independent living when it is anticipated that he may be adopted or live in a foster home. Accordingly, Brenda's third assignment of error is overruled.
 {¶ 24} Having found no error prejudicial to Brenda herein, in the particulars assigned and argued, we affirm the January 4, 2006 decision of the Court of Common Pleas of Allen County, Ohio, Juvenile Division granting permanent custody of Billy to the Allen County Children Services Board.
Judgment affirmed.
 Bryant, P.J., and Cupp, J., concur.
[1] Appellant, Billy English, Jr., also filed a notice of appeal; however, as he failed to file a merit brief, the instant appeal addresses and relates to only Brenda.